IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL MOHAMMED FAYYADH, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 18-4882 |
| ANDREW SAUL,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

Jamal Mohammed Fayyadh ("Fayyadh" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying his claim for Supplemental Security Income ("SSI").[2] In addition to opposing Fayyadh's Request for Review, the Commissioner seeks to stay the proceedings. Doc. No. 17. For the reasons set forth below, the Commissioner's Motion to Stay will be denied. Fayyadh's Request for Review will be granted on the alternative grounds that the Administrative Law Judge ("ALJ") who heard this case was not properly appointed in the manner required by the Appointments Clause of the United States Constitution and that the ALJ's opinion was not supported by substantial evidence. This matter will be remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion, including a hearing before a different ALJ than the

---

[1] Andrew Saul, the current Commissioner of Social Security, has been automatically substituted as the Defendant in this case pursuant to Fed. R. Civ. P. 25(d).

[2] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 3, 8.

one who previously reviewed Fayyadh's application; one who has been properly appointed pursuant to the Appointments Clause of the United States Constitution.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Fayyadh was born on February 12, 1980. R. at 140.[3] He is a native of Iraq who is unable to communicate in English. Id. at 140, 165. The record reflects that, sometime in 2005-2006, while working for an American organization in Iraq, he suffered multiple bullet wounds.[4] See id. at 175 (dating injury in 2005), 227 (dating injury in 2006). Fayyadh was admitted to the United States on July 31, 2014 as an asylee. Id. at 24, 164. He applied for SSI benefits on September 12, 2014, id. at 24, alleging that he became disabled on October 1, 2005 due to gunshot injuries to his hands and legs. Id. at 166, 175. His application was initially denied on February 10, 2015. Id. at 45-55. Fayyadh then filed a written request for a hearing on February 25, 2015. Id. at 61-63. A hearing before an ALJ was scheduled for December 8, 2016, but was continued because Fayyadh was out of the country in Jordan. Id. at 24. The hearing was rescheduled for March 30, 2017. Id. Fayyadh, however, also failed to appear for the rescheduled hearing, and his counsel represented that he had not heard from Fayyadh since late 2016 despite having made efforts to contact him. Id. at 39-40. The ALJ proceeded, without objection from Fayyadh's counsel, to decide the case on the existing record. Id. at 42-43. On June 6, 2017, the ALJ issued an opinion determining that Fayyadh was not disabled. Id. at 24-32. Fayyadh filed an appeal with the Appeals Council on August 10, 2017. Id. at 130-33. On September 14, 2018, the Appeals Council denied Fayyadh's request for review, thereby

---

[3]  Citations to the administrative record will be indicated by "R." followed by the page number.

[4]  The ALJ found that Fayyadh had no past relevant work as defined for Social Security purposes. R. at 31 (citing 20 C.F.R. § 416.964).

affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Fayyadh then commenced this action in federal court.

## II. THE ALJ'S DECISION

In his decision, the ALJ found that Fayyadh suffered from the following severe impairments: status post gunshot wound with neuropathy of the foot, major depressive disorder and posttraumatic stress disorder. Id. at 26. The ALJ concluded, however, that none of Fayyadh's impairments, nor the combination of those impairments, met or medically equaled a listed impairment. Id. at 27-28. The ALJ found that Fayyadh had the residual functional capacity ("RFC") "to perform sedentary work, as defined in 20 CFR 416.967(a), except the claimant is limited to no more than routine repetitive tasks." Id. at 28. Although a vocational expert ("VE") appeared at the hearing, id. at 37, the ALJ did not seek any testimony from her, either at the hearing or in subsequent interrogatories. See id. at 32. Instead, the ALJ found that Fayyadh's physical impairments limited him to sedentary work and that Fayyadh's "additional [nonexertional] limitations have little or no effect on the occupational base of unskilled sedentary work." Id. The ALJ cited to SSR 96-9p, 1996 WL 374185 (July 2, 1996) as his basis for concluding that Fayyadh's nonexertional limitations would not significantly reduce the occupational base available for persons whose exertional restrictions confined them to sedentary work. R. at 32. Based on that finding, the ALJ relied on Medical-Vocational Rule 201.23, 20 C.F.R. Part 404, Subpt. P, App. 2 § 201.23, as a framework for concluding that Fayyadh was not disabled. R. at 32.

## III. FAYYADH'S REQUEST FOR REVIEW

In his Request for Review, Fayyadh asserts that the appointment of the ALJ who presided over his case did not comply with the Appointments Clause of the United States Constitution and that, pursuant to the recent United States Supreme Court decision in <u>Lucia v. Securities and Exchange Commission</u>, 138 S. Ct. 2044 (2018), his case must be remanded for a new hearing before a different, properly-appointed ALJ. In addition, Fayyadh argues that the ALJ erred in the following respects: (1) failing to properly address the medical evidence in formulating his RFC; and (2) determining that he was capable of performing other work available in the national economy by relying on the Medical Vocational Grids (the "Grids") without taking testimony from a VE.

## IV. SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986); <u>Newhouse v. Heckler</u>, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact." <u>Schwartz v. Halter</u>, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review. See <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920 (references to other regulations omitted).

## V.     DISCUSSION

### A.     The Commissioner's Motion to Stay Is Denied

Fayyadh argues, for the first time in this action, that the appointment of the ALJ who presided over his case did not comply with the Appointments Clause of the United States Constitution and that, pursuant to the Supreme Court's decision in Lucia, his case must be remanded for a new hearing before a different, properly appointed ALJ.  Pl.'s Br. (Doc. No. 12) at 3-4.  The question of whether or not a Social Security claimant may raise an Appointments Clause challenge for the first time in a Request for Review filed in a federal district court pursuant to 42 U.S.C. § 405(g) has produced conflicting decisions by courts in this District.[5]  The undersigned recently has expressed her opinion on this issue in a Report and Recommendation issued in Pisacano v. Comm'r of SSA, No. 18-3182 (E.D. Pa. June 27, 2019), ECF No. 14, and will not address the merits of that question again here.  The issue currently is under review by the United States Court of Appeals for the Third Circuit in two consolidated cases: Bizarre v. Berryhill, No. 19-1773 (3d Cir.) and Cirko v. Berryhill, No. 19-1772 (3d Cir.).

The Commissioner has filed a motion in this and other pending cases raising the Appointments Clause issue, seeking a stay pending the Third Circuit's decision in Bizarre and Cirko.  See, e.g., Doc. No. 17.  This Court also has previously expressed its opinion that a stay in

---

[5]     A number of district judges and magistrate judges in this District have held that a claimant may raise an Appointments Clause claim for the first time in district court.  See, e.g., Kellett v. Berryhill, No. 18-4757, 2019 WL 2339968 (E.D. Pa. June 3, 2019) (Rice, J.); Ready v. Berryhill, No. 18-04289, 2019 WL 1934874 (E.D. Pa. Apr. 30, 2019) (Lloret, J.); Culclasure v. Comm'r of Soc. Sec., 375 F. Supp. 3d 559 (E.D. Pa. 2019) (Kearney, J.); see also Order adopting report and recommendation, Perez v. Berryhill, No. 18-1907 (E.D. Pa. Apr. 23, 2019), ECF No. 21 (Savage, J.).  A number of other judges in this District have ruled to the contrary.  See, e.g., Marchant v. Berryhill, No. 18-035, 2019 WL 2268982 (E.D. Pa. May 28, 2019) (Kelley, J.); Muhammad v. Berryhill, 381 F. Supp. 3d 462 (E.D. Pa. 2019) (Pappert, J.); Cox v. Berryhill, No. 16-5434, 2018 WL 7585561 (E.D. Pa. Dec. 18, 2018) (Diamond, J.).

6

the numerous pending cases raising the Appointments Clause issue is not warranted because it threatens to cause undue delay and hardship to claimants while it would not serve judicial efficiency because it would create a backlog of stayed Social Security cases for the Court, thus threatening even further delay. See Report and Recommendation at 4-7, Fuentes v. Saul, No. 18-3513 (E.D. Pa. Sept. 26, 2019), Doc. No. 24. In the present case, the Commissioner's stay argument carries even less weight because, as discussed infra in section V(B)(3), this Court would remand the case to the Commissioner regardless of the outcome of the Appointments Clause issue due to substantive legal error in the ALJ's decision under review. As a result, staying the case until the Third Circuit issues its decision will only engender further, unnecessary delay and further financial hardship on Fayyadh, an indigent plaintiff. See Doc. No. 4 (granting Fayyadh in forma pauperis status).

> **B. The Case Should Be Remanded Because the ALJ Committed Legal Error in His Determination that Fayyadh Could Perform Unskilled Sedentary Work Based on His RFC Without Evidentiary Support from VE Testimony or from an Administrative Rulemaking by the Commissioner**
>
> **1. The Legal Standard for When an ALJ May Decide that Jobs Exist in Sufficient Numbers in the National Economy that a Claimant Could Perform Without Obtaining Evidence on that Subject from a VE**

This Court is required to reverse the Commissioner's decisions when they are not supported by substantial evidence. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). At step five of the Commissioner's sequential analysis of Social Security applications, the Commissioner bears the burden to establish through evidence of record that the applicant is able, in light of his or her individual functional limitations, to perform specific jobs that are available in significant numbers in the national economy. Gilliland v. Heckler, 786 F.2d 178, 182 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). "[A]lthough the Social Security Act contemplates that disability hearings will be individualized determinations based on evidence adduced at a

7

hearing," the Commissioner may also meet his burden by making factual findings through a rulemaking process "'to determine issues that do not require case-by-case consideration.'" Sykes v. Apfel, 228 F.3d 259, 264 (3d Cir. 2000) (quoting Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Although the determination of a particular claimant's RFC requires an individualized assessment of the claimant's remaining abilities based on evidence presented at a hearing, the type and numbers of jobs available that exist in the national economy for a person with the claimant's functional limitations is "the type of general factual issue [that] may be resolved . . . through rulemaking" without the introduction of evidence in each individual proceeding. Campbell, 461 U.S. at 467-68.

Under his rulemaking authority, the Commissioner has promulgated the Grids to establish whether sufficient jobs exist for a person with a claimant's particular physical limitations and other vocational factors. See id. Social Security regulations divide the types of available occupations into the following categories based on their exertional requirements: "sedentary, light, medium, heavy or very heavy." SSR 83-10, 1983 WL 31251, at *2 (Jan. 1, 1983). The Grids "contain numbered rules within tables that provide short-hand conclusions of 'disabled' or 'not disabled' at Step Five based upon the claimant's vocational factors (age, education, and work experience), coupled with a specific RFC (sedentary, light, medium, heavy, or very heavy work)." Campbell v. Astrue, No. 09-5356, 2010 WL 4689521, at *4 (E.D. Pa. Nov. 2, 2010). Applicable regulations define the exertional requirements of each of the exertional categories based on the claimant's ability to perform the "primary strength activities [of] sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 83-10, 1983 WL 31251, at *5. When all of the claimant's impairments match those of a particular rule in the Grids, the Grids direct the

8

result of the decision of whether or not a claimant is disabled. 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(a).

The regulations also recognize that claimants may suffer from limitations other than in their ability to perform these primary strength activities, which they define as "nonexertional impairments." SSR 83-10, 1983 WL 31251, at *7. Nonexertional impairments "include[] impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." Id. The Grids do not address such nonexertional impairments. See SSR 85-15, 1985 WL 56857, at *1 (1985). Instead, they only "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges that would be contraindicated by the additional [nonexertional] limitations or restrictions" to which the individual is subject. Id. As a result, for a claimant who suffers from nonexertional impairments, the Grids alone cannot provide substantial evidence to determine that work exists that the claimant can perform despite his or her nonexertional impairments. See Green v. Schweiker, 749 F.2d 1066, 1072 (3d Cir. 1984); Wallace v. Sec'y of Health and Human Servs., 722 F.2d 1150, 1156 (3d Cir. 1983).

In such cases, the ALJ must make "an adjudicative judgment" regarding the extent to which the occupational base otherwise available to persons with the claimant's physical limitations would be eroded by the claimant's nonexertional limitations. SSR 96-9P, 1996 WL 374185, at *5. That judgment must be supported by substantial evidence, either in the form of VE testimony or by reliance on a Social Security Ruling ("SSR") which establishes by rulemaking that the Commissioner has taken notice of the fact that the particular type of nonexertional limitation suffered by the claimant does not substantially erode the occupational

base that otherwise would be available to the claimant. See Campbell, 461 U.S. at 467-68; Allen v. Barnhart, 417 F.3d 396, 402-03 (3d Cir. 2005). The Third Circuit specified in Allen, however, that "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." 417 F.3d at 407. The cited SSR must "include a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational job base." Id. at 404.

In addition, when choosing to rely upon an SSR, the ALJ must provide an explanation of "how the specific limitations experienced by [the claimant] would impact his [or her] ability to perform" gainful work that the claimant otherwise could perform based on his or her individual exertional limitations. Id. The ALJ must connect the claimant's particular nonexertional limitations to findings contained in the cited SSR and must "explain how [the claimant's] particular [nonexertional] impairments relate to the categories or examples in" the cited SSR. Meyler v. Comm'r of Soc. Sec., 238 F. App'x 884, 890 (3d Cir. 2007). That ALJ's explanation must make "crystal clear" how the cited SSR language fits the claimant's particular combination of impairments in order to provide an evidentiary basis on which the ALJ can determine whether or not jobs exist that the individual claimant is capable of performing despite his or her combination of exertional and nonexertional limitations. See Allen, 417 F.3d at 405. A generalized citation to an SSR without such an explanation is not sufficient to support a determination that a claimant is not disabled. Mininni v. Colvin, No. CV 14-305E, 2016 WL 1117609, at *3 (W.D. Pa. Mar. 21, 2016); Vanderdys v. Colvin, No. 2:14-CV-6925 (WJM), 2016 WL 184420, at *7 (D.N.J. Jan. 15, 2016); Kuznetsov v. Astrue, No. 10-7-E, 2012

WL 11028, at *6 (W.D. Pa. Jan. 3, 2012); Rivera v. Astrue, No. 08-220, 2009 WL 1065920, at *11 (W.D. Pa. Apr. 20, 2009); Fahy v. Astrue, No. 06-CV-366, 2008 WL 2550594, at *6 (E.D. Pa. June 26, 2008).

### 2. The ALJ's Review of the Medical Evidence

Between the time Fayyadh entered this country in 2014 as an asylee and the latest medical records available, which are for November 2015, Fayyadh's mental health-related records consist of an initial and one subsequent "Assessment/Comprehensive Biopsychosocial Adult Evaluation" forms from Northeast Community Center for Behavioral Health, R. at 248-303, additional mental status examinations conducted by doctors who treated his physical ailments, see, e.g., id. at 215-47, an opinion by a State agency psychologist, id. at 48-53, and a consultative examination report, id. at 278-84.[6] Besides noting the paucity of mental health treatment records, id. at 31, and that the results of Fayyadh's various mental status examinations were largely benign, id. at 30, the ALJ considered and gave weight to the opinions of the State agency examiner and the consultative examiner.

The State agency examiner, Peter Garito, Ph.D, concluded that Fayyadh did not have limitations in understanding and memory, but did have limitations in maintaining sustained concentration and persistence. Id. at 52. More specifically, he opined that Fayyadh was not

---

[6] Fayyadh contends that the ALJ erred in failing to discuss and provide a sufficient explanation of his evaluation of these mental health records. Pl.'s Br. at 6-9. Because, as discussed infra in Section V(B)(3), remand is necessary due to the ALJ's legal error in his conclusion at step five of the sequential analysis that a person with Fayyadh's RFC could perform jobs that existed within the national economy, the sufficiency or insufficiency of the ALJ's RFC analysis would not alter the outcome of this case. Moreover, because the latest medical records in the record are from 2015, it is likely that, on remand, additional, more recent medical records may be available, necessitating a new RFC analysis. Accordingly, this Memorandum Opinion will not further address the adequacy of the ALJ's RFC analysis.

11

significantly limited in the ability to carry out very short and simple instructions or even to carry out detailed instructions. Id. He also opined that Fayyadh did not have significant limitations in the abilities to: perform activities within a schedule, maintain regular attendance, and be punctual within ordinary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Id. Dr. Garito also stated that Fayyadh had moderate limitations in his abilities to: maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and respond appropriately to changes in the work setting. Id.

The consultative examiner, Danielle Meltzer, Psy.D, conducted an interview of Fayyadh and concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Id. at 281. She also submitted a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" in which she rated Fayyadh as having mild restrictions in his abilities to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting. Id. at 282-83. Dr. Meltzer rated Fayyadh as having moderate restrictions in his abilities to: understand and remember complex

instructions; carry out complex instructions; and make judgments on complex work-related decisions. Id. at 282.

The ALJ noted Dr. Garito's evaluation of Fayyadh and concluded that it was "somewhat consistent with the medical evidence" but found that the record "d[id] not indicate that the claimant has limitation [sic] in social functioning or day-to-day functioning." Id. at 31. He, therefore, afforded it "partial weight." Id. He also addressed Dr. Meltzer's evaluation of Fayyadh and concluded that it was "mostly consistent with the medical record as a whole," and he afforded it "significant weight." Id. Nevertheless, the ALJ did not adopt all of the findings made by either of those evaluators. In considering at step three of the sequential analysis whether Fayyadh's mental health limitations met or medically equaled those of the listings for affective disorders (Listing 12.04) or for trauma and stressor-related disorders (Listing 12.15), the ALJ concluded that Fayyadh had no limitations in understanding, remembering, or applying information or in interacting with others. Id. at 27. He did find, however, that Fayyadh had moderate limitations in concentrating, persisting or maintaining pace. Id.

### 3. The ALJ's Step Five Analysis Is Legally Deficient

At step five of the evaluation, the ALJ limited himself to the following analysis:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.23. However, the additional [nonexertional] limitations have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of this rule. Social Security Ruling 96-9p, specifies that the basic mental demands of competitive, remunerative work include the abilities on a sustained basis to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting. The only mental limitation found in the above residual functional capacity is that the claimant is limited to no more than routine, repetitive tasks. This is consistent with meeting the above mental demands from Social Security Ruling 96-9p. The claimant is thus able to meet the mental demands of unskilled work.

13

Id. at 32.

The ALJ's stated reasoning for his decision is legally insufficient under the well-established precedent of Sykes, Allen and their progeny. The ALJ was required to cite to valid evidence in the record to support his determination that jobs existed that Fayyadh could perform within the limits of his RFC. See Campbell, 461 U.S. at 467-68; Flores v. Comm'r of Soc. Sec., No. 15-6356 (RMB), 2016 WL 4689948, at *12 (D.N.J. Sept. 6, 2016). Although a VE was present at the March 30, 2017 hearing, R. at 37, the ALJ did not take the opportunity to obtain vocational evidence at the hearing or in post-hearing interrogatories. Instead, he purported to rely on the list of the "basic mental demands of competitive, remunerative work" set out in SSR 96-9p. Id. at 32. That reliance does not meet Allen's requirement that the SSR relied upon make "crystal clear" the extent to which the available occupational base is reduced for a person with the claimant's specific combination of exertional and nonexertional impairments.[7] 417 F.3d at 407. Indeed, the Allen court specifically rejected an ALJ's attempt to base his finding that the claimant's mental health impairments "d[id] not significantly erode the base of jobs that claimant is capable of performing" on SSR 85-15. Id. at 400. The Allen ALJ based that factual finding solely on SSR 85-15's list of "[t]he basic mental demands of competitive remunerative unskilled work," id., which is similarly general in its description of those demands to the list set out above for SSR 96-9p.[8] The Allen court rejected the ALJ's reliance on SSR 85-15's list of the basic mental demands of unskilled work, stating:

---

[7] The ALJ in Allen determined that the claimant's nonexertional limitations were a mild limitation in his activities of daily living and in concentration and moderate limitations in social functioning. 417 F.3d at 400.

[8] SSR 85-15 states that the "basic demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple

(Footnote continued on next page)

> Notwithstanding the ALJ's reference to, and apparent reliance on, this Ruling, we are at a loss to find within the Ruling itself the conclusion the ALJ seems to find regarding the occupational base for one with Allen's mental limitations.
>
> The ALJ makes broad statements regarding Allen's RFC, as we referenced above, but his conclusion only addresses in general fashion the "mental limitations for simple, routine, repetitive work." It does not reference any aspect of SSR 85-15 that relates Allen's particular nonexertional limitations to the occupational job base.

Id. at 405.

Cases decided after Allen also have rejected ALJs' attempts to rely on the Commissioner's listing of the basic mental demands of work as an evidentiary basis for finding that an applicant's nonexertional limitations did not significantly reduce the occupational base that would have been available to the claimant based solely on his or her exertional limitations, whether that reliance was based on SSR 85-15. See, e.g., Kiasonesena v. Berryhill, No. 17-3160, 2018 WL 3350398, at *10 (E.D. Pa. July 6, 2018); Thompson v. Comm'r of Soc. Sec., No. 2:16-CV-2953 (CCC), 2017 WL 4122431, at *6 (D.N.J. Sept. 15, 2017); Mininni, 2016 WL 1117609, at *3-4; Fahy, 2008 WL 2550594, at *5-6, or on SSR 96-9p, see, e.g., DeRigo ex rel. DeRigo v. Comm'r of Soc. Sec., No. 3:17-CV-1523, 2019 WL 1996015, at *7 (M.D. Pa. April 9, 2019); Morel v. Colvin, No. 4:16-cv-00476-MWB-GBC, 2017 WL 1179972, at *6 (M.D. Pa. Mar. 3, 2017), report and recommendation adopted, No. 4:16-CV-0476, 2017 WL 1162946 (M.D. Pa. Mar. 29, 2017); Gilyard v. Comm'r of Soc. Sec., No. 13-3299 (SDW), 2014 WL 794580, at *6-7 (D.N.J. Feb. 27, 2014).

---

instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." 1985 WL 56857, at *4. SSR 85-15 addresses the use of the Grids "as a framework for evaluating solely nonexertional limitations," id., while SSR 96-9p addresses how to determine the "implications of a [RFC] for less than a full range of sedentary work," such as when a person with an RFC for sedentary work also has nonexertional limitations, 1996 WL 374185, at *1, *9.

In the present case, the ALJ made a factual finding that Fayyadh suffered from moderate limitations in maintaining concentration, persistence or pace. R. at 27. The ALJ's summary conclusion that Fayyadh's mental health limitation had "little or no effect on the occupational base of unskilled sedentary work," failed to meet the legal requirements to serve as an evidentiary basis for his decision. The ALJ was required to explain the "'fit' between [Fayyadh's] specific nonexertional impairment[], and the way in which the [SSR] dictates that such nonexertional limitations impact the [occupational] base" otherwise available to him. Allen, 417 F.3d at 406. SSR 96-9p's general statement of the basic mental requirements of unskilled work fails "to explain how the Plaintiff's impairments would impact [his or] her ability to perform unskilled work," Fahy, 2008 WL 2550594, at *6 (rejecting the argument that the claimant's moderate limitations in maintaining concentration, persistence or pace was adequately captured by a limitation to unskilled work and the ALJ's citation to SSR 85-15 as an evidentiary basis for his assertion that the "claimant's ability to perform work at all exertional levels is not significantly compromised by her non-exertional limits" (internal quotation marks omitted)).

Like SSR 85-15, SSR 96-9p does not mention the effects on the occupational base of a moderate limitation in maintaining concentration, persistence or pace. Much like the corresponding list of basic mental demands stated in SSR 85-15 that the Allen court found failed to present a sufficient evidentiary basis for a step five finding, SSR 96-9p merely states that, as to limitations in the "basic mental demands" that it lists, "[a] less than substantial loss of ability to perform any of the above basic work activities may or may not significantly erode the

occupational base."[9] 1996 WL 374185, at *9. This does not provide the "crystal clear" administrative finding required by Allen. Here, the only authority on which the ALJ appears actually to have relied to determine that a moderate limitation in concentration, persistence or pace "would have little or no effect on the occupation base of unskilled sedentary work," R. at 32, is his own personal opinion. For this reason, the ALJ's step five analysis is not supported by substantial evidence, and this case must be remanded for a proper determination of the extent to which Fayyadh's particular mental health limitations may erode the occupational base available to him.[10]

## VI. CONCLUSION

For the reasons set forth above, I find that the ALJ was not properly appointed as required by the Appointments Clause and that his findings are not supported by substantial evidence. Accordingly, Plaintiff's Request for Review is granted, and the case will be remanded for another hearing before a properly-appointed ALJ other than the one who heard it previously.

---

[9] By comparison, SSR 85-15, which the Allen court found to be an insufficient evidentiary basis for determining the extent of the erosion of the available occupational base, 417 F.3d at 404-05, contained a similarly generalized instruction, stating, that the issue to be decided "is how much the person's occupational base . . . is reduced by the effects of nonexertional impairments. This may range from very little to very much, depending upon the nature and extent of the impairment." 1985 WL 56857, at *3.

[10] To the extent the ALJ relied on SSR 96-9p, he also failed to comply with its direction that "[w]here there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." 1996 WL 374185, at *4. By failing to identify specific occupations that he found Fayyadh could perform, the ALJ made it impossible for Fayyadh to challenge whether he could actually perform the requirements of any such specific occupation or for this Court to perform its "'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

An appropriate Order follows.

Dated: October 22, 2019

BY THE COURT:


*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE